Judge Marshall
delivered the Opinion of the Court.
Head sued Board, in an action of trespass, vi etnrmis, for seizing and carrying away and Converting to his own use a horse, bridle and collar, the property of the plaintiff, and then in his possession. The parties w'ent to trial upon the plea of not guilty, and leave to give special •matter in evidence.
It appears that Board, being a constable -of Hancock county, had an execution ill his. hands, against Head, *490 who resided in Daviess county, immediately across the division line between the two counties, and that the stable in which the horse, bridle &c. were seized, was also across the line, as it had been actually run by the surveyor appointed to run it. But that, notwithstanding this fact, of which Board was apprized at the time, he took the property and sold it, upon public advertisement, in the usual form, for the satisfaction of the execution. His return states, that the property sold for twenty five dollars; of which, after deducting costs and commission, eighteen dollars and fifty cents remained as the net proceefis of the sale, to be credited on the execution. It was stated by a witness on the trial, that the horse, bridle and collar were worth thirty six dollars and fifty cents; and for that sum a verdict and judgment were rendered against the defendant; who, having excepted to several opinions of the Court, pronounced during the trial, prosecutes a writ of error, for the reversal of the judgment.
■When 'the lines of a county have ¡been run by the public authority, those lines, until altered by a like authority, must beregarded as indicating the true boundaries of the •county, and respected ds such by public officers and private citizens.
The first question to be noticed relates to the county line.
The statute erecting the county of Hancock describes a portion’ of the boundary as running from a designated point, “to the mouth of Scaffold creek, so as to leave William Head and Samuel Barker in the county of Daviess.” The line, as actually run, left the stable, as well as the dwelling house, of Head (the plaintiff) in the county of Daviess; and the Court re&sed to permit the defendant to ask of a witness the question, whether a line run as described in the words above quoted from the -statute, would, or would not, include the plaintiff’s stable in the county of Hancock. In this we think the Court decided correctly. The boundary lines of counties are matters of public concern; and when they have been run, and their position ascertained, by public authority, the actual line — though it should vary from the descriptive boundary designated in the statute, must be conclusively binding upon all private individuals and county officers, until a different position is given to it by the public authorities. It is also a familiar principle in relation to boundary lines, and one which seems appli *491 cable to public as well as private boundaries, that a descriptive course shall yield to a line actually run. It is by no means certain, and is not conceded, that in directing the line to be so run as to leave William. Hoad in the county of Daviess, the Legislature intended tl at it should barely leave his dwelling house in that county, without regard to other adjacent buildings which usually form a part of a man’s homestead, or of the curtilage. But we are satisfied, that when the surveyor designated by the Legislature, had run the line, the constable had no right to act, as such, beyond it; and that having passed it knowingly, his acts were not only without authority, but without that paliation which ignorance of fact sometimes furnishes. Aud that, as the testimony offered was incompetent to prove that he was within his county, it was entirely irrelevant to the issue, and properly rejected.
An act establishing a new county directs, that the.line shall be so< run as to leave W. Head in another county: the true construction does not require that the new county shall include every thing hut his dwelling: house; the curtilage, at least,, may be excluded with the house.
In trespass, de bonis asportatis, the verdict is made up upon, two different incidents: (1) the. fact oft ailing— which is actionable, though the-plaintiff' sustains, no loss of property by it; and. which may beat-tended with circumstances more or Jess aggravated,and for which —there being no data by which the actual injury can be computed —the jury must assess damages, actual or vindictive, according to. their discretion— subject, only, to-the power of the Court to grant a new trial; and (2) the plaintiff’s actual loss of property —by being totally deprived of it; by its being injured; by expenses iu recovering it, §-c. the-value or amount of which is, so far, the criterion of damages. Hence, the measure of damages, in such cases, is not always the value of the property taken, with smart money; and-evidence, (of any facts which could not be specially pleaded,) is admissible in mitigation of damages — to show, that the property wa3 restored; the proceeds applied to tho plaintiff’s use; that he bought it in af an under-value SfC. The true measure of damages,, is the actual loss or injury sustained by the plaintiff, augmented by such smart money as the jury, in their unrestricted discretion, think proper to allow.
After the defendant had been precluded from this testimony, he asked a witness who had been introduced by the plaintiff', whether he (the witness) had not, at the-sale, purchased the horse in question with the plaintiff’s money, and for his use, and this question being objected to, the Court would not permit it to be asked or answered. But instructed the jury, that if they believed, from the evidence, that the line actually run by the surveyor, as the boundary between Hancock and Daviess coun ties, left the plaintiff’s stable in Daviess county, and the defendant took the property and sold it under execution, they must find for the plaintiff, and that the value of the property, with such smart money as they might choose to give, was the proper criterion of damages»
As the admissibility of the testimony offered, depends upon what is the proper criterion of damages in the case, we shall consider the question of evidence and the in *492 struction just cited together, and both with a view to the question of damages.
In the action of trespass for wrongfully taking, carrying, away and; converting the property of the plaintiff,, there are obviously two grounds or elements of the damages, which a jury is at liberty to find: first — the wrongful taking; for which, as it may be more or less flagrant according to the manner of the act and the circumstanstances attending it, there can be no certain criterion of damages. And,, second — the injury sustained by the plaintiff, arising from the loss or deprivation of his property: for which, as it' maybe estimated with reasonable exactness,, there is, in the measure of the injury itself, a rational standard for ascertaining the damages. Wherever there is. a wrongful taking of the property of another, the law implies, that the owner has sustained some damage; and. although there be in fact no sensible dam. age from the loss or injury of the property, or from an actual deprivation of its use, a plaintiff suing for the mere wrongful taking, is entitled to recover some damages; which a jury may increase ‘by way of smart money,’ in proportion to their estimation of the flagrancy of the fact. But in "such, a' case, there being no injury to the property, and no loss of the- thing itself or of its. use, it seems clear, that the value of the property or of its use, forms no, proper element of the damages to be assessed against the defendant.
The inference to be drawn from these principles, is, that the jury being at liberty (subject to the control of the Court in granting a new trial,) to find, by way of smart money, such damages- as they may choose, for the. wrongful taking, and which will, of course, be great in proportion, as the act and manner of taking are inexcusable, or otherwise — the plaintiff is not entitled, in addition to, those damages, to any thing, more, on account of. the defendant’s subsequent treatment or disposition of the property, than an, actual compensation for any injury sustained with regard to it. If, for instance, a horse be taken from. the owner in the most outrageous manner, and soon after returned to 'him without injury, *493 whatever damages a jury might find for the wrongful taking, there could be ño pretence that the value of the horse should be taken into consideration as a part of them; because the plain tiff, being restored to the possession of his property, in as good condition as before, would have no right also to recover the price. But if the owner were subjected to any costs in regaining the possession, or to any loss by being deprived of its use, or if the property wrnre injured in consequence of the wrongful taking or subsequent disposition of it, he could recover damages for the injury actually sustained from any of these causes, in addition to Such smart money as the jury might choose to give for the wrongful taking;, but he would not be entitled also to the value of the; horse.
It seems, therefore, that in trespass for taking and carrying away &c., the value of the property, in addition to smart money, is not universally the criterion of damages ; and can only be so, when the property has been, actually lost to the owner, by' reason of its being taken away or converted, and when he has sustained no otjigr injury but the loss of the property. The true criterion in all cases, is the actual injury sustained in consequence of the acts complained of,, with such vindictive damages as the nature of the case may, in the opinion of the jury, require. And, of course, the quantum of injury being a material question in issue, evidence tending to mitigate it is relevant and admissible — unless it be of such a character as. to be excluded because the matter of it ought tQ have been specially pleaded. In the present case, this ground of objection is inapplicable, as well on account of the .nature of the evidence, as because, by agreement, any matter which could be pleaded, might have been given in evidence. And if the view which we have taken be correct, the only question, upon which the admissibility of the testimony intended to be drawn from the witness, by the defendant’s interrogatory, depends— is, whether it tended to demonstrate the actual extent of the injury sustained by the plaintiff from the acts'complained of.
A constable having an execution, against a defendant residing in an adjoiningcounty, passes over into that county, and there seizes defendant’s horse, which he takes to liis own county, andsells,and credits theexecution with the net proceeds: held, that the horse, though thus illegally taken and brought into constable’s c.oilkty by him, wlA there, was '¿ííf^Uñ.ílj.e execution and sixlc*. and that the constable being sued for the trespass, mayshow,m mitigation of damjnages, that the valueofthe horse or some part of it, went to pay the pltf’s debt, or to his use.
Taking it for granted, as we must do in determining this question, that the witness would have stated, that he had purchased the property with the plaintiff’s money, and for his use, it is obvious that the evidence conduces to prove, that the plaintiff had regained the possession at a less cost than the actual value of the property, and consequently that the total value was not the measure of the actual injury sustained by him. Coupled with the execution and return thereon, which was already before the jury, it tended also to show, that, although the plaintiff had, through the witness, paid twenty five dollars, as the cost of regaining the property — eighteen dollars and fifty cents of this sum had been credited to him, on an execution in. force against him, for a subsisting debt, which he was bound to pay, and for the satisfaction of which, the property (though wrongfully taken in Daviess county) was yet liable when carried into the county of Hancock, and u erefore properly sold. The inference from these facts would be, that the actual injury sustained by the plaintiff, in regard to the property itself, and for which he was entitled to compensation, consisted oi ■1,-' payment of seven dollars and fifty cents, the diil'-icnci* between the two sums above mentioned, and the temporary deprivation of the use of the property from the time when it was taken, till the sale; and this being the extent of the actual'injury, a just compensation for it, together with such ‘smart money’Tor the wrongful taking, as the jury might think proper to give, would, with this evidence before them, have been, the proper measure of damages. As the evidence offered might have had this effect in elucidating the extent of the injury, the Court erred in rejecting it.
For the reasons which have been already stated; the criterion of damages assumed by the Court, in the instructions given, was also, in our opinion, erroneous.. The execution and return sho- /ecl, that eighteen dollars, and fifty cents, as part of the value of the .property, was. credited to the plaintiff; and although the evidence before the jury, and to which the instruction applies, did not conduce to prove, that the plaintiff had regained the possession of the property, it conduced to prove that, *495 however wrongful the taking might have been, the sale was lawful, and the credit to the amount of eighteen dollars and fifty cents properly applied, and consequently that the actual injury sustained, even if the possession never was regained, was, so far as related to the value of the property, the difference between its actual value and the credit allowed on the execution. To whatever extent the defendant, having a right to apply the property taken to the benefit of the plaintiff, did actually so apply it, to that extent it was not in fact converted to the defendant’s, but appropriated to the plaintiff’s use. To that extent, therefore, was the partial conversion less injurious than a total one would have been; and to that extent, in our opinion, should the damages be diminished below what they should be if the full value of the property were lost to the plaintiff.
It is apparent, and therefore scarcely necessary to state, that the conclusions to which we have come, are intended to apply only to a case in which, notwithstanding the illegal taking, the subsequent possession and disposition of the property by the defendant, are authorized by law.
For the errors which have been noticed, the judgment is reversed, and the cause remanded for a new trial, in conformity with the principles of this opinion.